IN RE SULLIVAN'S ESTATE. MARYLAND CASUALTY
CO., APPELLANT, *v.* SULLIVAN ET AL., RESPONDENTS.

(No. 8,171.)

(Submitted October 8, 1941.  Decided October 22, 1941.)

[118 Pac. (2d) 137.]

*Mr. R. F. Gaines,* for Appellant, submitted an original and a supplementary brief and argued the cause orally.

*Margaret K. Sullivan, Mai Jean Sullivan* and *Kathryn Baird Sullivan,* Respondents, appearing *pro se,* submitted briefs and made oral argument.

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

Margaret M. Sullivan died testate in 1924. Her will was admitted to probate in 1925, and letters testamentary issued to James C. Sullivan and Jane S. Higgins, her son and daughter who were jointly named therein as executor and executrix. The business of the estate was handled with almost a total disregard of the statutory requirements. Apparently because the property consisted largely of small cabins and other buildings of little rental value in an undesirable part of Butte, the business of looking after it and collecting the rents had been left almost entirely to a realtor by testatrix in her lifetime and the co-executors continued that arrangement, leaving the business and the bookkeeping to him. He was also the local agent of the appellant Maryland Casualty Company, which was surety upon the co-executors' bonds, and as its representative was the co-signer of all checks.

Executor Sullivan died on February 4, 1927, and executrix Higgins on May 2, 1935. Kathryn Baird Sullivan, the widow of executor Sullivan, was later appointed executrix of his will and also administratrix *de bonis non* of the estate of Margaret M. Sullivan. The only account ever filed during the lifetime of either of the co-executors was filed by the executrix Higgins in October, 1929. The statutory notice was duly given of its presentation but no decree of settlement appears in the court files, the only record being a minute entry on November 9, 1929, settling the account and charging the co-executors with a $535.05 cash balance.

In 1938 the widower and administrator of the estate of executrix Higgins filed on her behalf a second account, apparently made up from the realtor's books, which together with the 1929 account covered the entire administration by the co-executors. Other papers were filed which it is not necessary to mention here.

Mai Jean Sullivan, a granddaughter of testatrix Margaret M. Sullivan and a daughter of executor Sullivan, filed a motion in 1937 and an amended motion in 1938 to vacate and set aside the order of November 9, 1929, settling the first account, and to reopen the account. Her motion was based upon the grounds that the account was incorrect and that she was a minor when the settlement was made. (Sec. 10303, Rev. Codes.) The court made an order appointing a referee "for the purpose of determining the motion of Mai Jean Sullivan to vacate" the order of November 9, 1929, and generally for the purpose of examining the account and determining the balance due from the co-executors. The referee conducted an extensive hearing and in 1938 made his findings and report, in which he purported to grant the motion to set aside the 1929 order of settlement.

The referee also found that the co-executors' receipts, as shown in the two accounts, were $11,724.07 but that there were other receipts of $330.50 not reported, making a total of $12,-054.57; that $1,349.37 of the $11,492.17 claimed expenditures should be disallowed, reducing them to $10,142.80, and leaving a balance of $1,911.77. He also found the estate entitled to

$250 for the value of a building lost through the co-executors' neglect, $400 for personal property not accounted for, $1,626.07 for penalty and interest added because of the failure to pay taxes, and the further penalty against executrix Higgins of $467.60 for interest at six per cent. on $953.34 to her death from February 2, 1927, when the estate could have been closed, with a balance of the latter amount. The total balance found due the estate was $4,645.44, but a correct total of the above amounts seems to be $4,655.44. He found that each executor was chargeable with one-half of all items except the above item of $467.60, which should be charged entirely to executrix Higgins, and except the above item of $1,626.07, which should be charged $1,476.23 to executrix Higgins, and $149.23 to executor Sullivan (leaving $.61 not charged to either); thus of the $4,655.44 balance the referee found executor Sullivan chargeable with $1,430.11½ and executrix Higgins with $3,224.71½, with the other $.61 not allocated; thus making the total amount chargeable against them $4,654.83. There were other findings which need not be outlined here.

On June 8, 1940, the district judge rendered an "order and decision" in which he ordered "that all of the findings of fact and all of the decisions of the referee herein, which are not inconsistent with these findings and decision, are hereby ratified, approved and confirmed." He then proceeded to make additional findings on matters submitted to the referee but not included in the latter's findings, charging the co-executors with $310.55 claimed but not actually paid as insurance premiums, $522.81 for premiums improperly paid for overinsurance of property, and $90 expended because of their failure to close the estate when it could and should have been closed. The order settled the account as of February 4, 1927, the date of executor Sullivan's death, in favor of the estate for $953.34, and charged one-half to each of them; the account for the balance of the period to the date of executrix Higgins' death was settled in favor of the estate for $3,845.10. The entire balance was thus set at $4,798.44, of which $476.67 was charged to executor Sullivan and $4,321.77 to executrix Higgins. The order

concluded: "All the motions, objections and exceptions of the respective parties herein, which are in conflict with this decision are hereby each and all of them overruled."

Since the balance found by the referee, plus the three additional charges made by the court, would exceed the balance found by the court, it is apparent that some part of the referee's findings are inconsistent with the findings and decision of the court, and that some of the "motions, objections and exceptions of the respective parties" must have been granted and the remainder considered "in conflict with this decision," and therefore overruled by the district court. However, it is impossible to tell which items stand in either group, since the parties made no motion to seek a clarification of the order of June 8, 1940. Furthermore, they have not appealed from it and, therefore, the question of its correctness is not within this court's jurisdiction. No express ruling was made in the order relative to Mai Jean Sullivan's application to vacate the settlement order of November 9, 1929, but it is apparent that the referee's finding in that respect was adopted, since otherwise the court could not have gone back of the 1929 accounting.

On August 13, 1940, the district judge filed an "amended order settling accounts" beginning as follows:

"The attention of the court having been called to omissions from and errors in its order heretofore made under date of June 8, 1940, in the matter of the estate of Margaret M. Sullivan, deceased, wherein and whereby the court assumed to settle accounts theretofore rendered and filed on behalf of James C. Sullivan, deceased, co-executor, and by and on behalf of Jane S. Higgins, now deceased co-executrix, which omissions and errors (the latter in part the result of miscalculations by the Judge of the Court) have resulted in uncertainties as to the intention of the Court and in the failure of said order and the records of the court to recite the actual facts as found by the Court, and the truth of the case, the Court now, of its own motion, makes this amended order settling said accounts and reports, hereby revoking its former order of June 8, 1940, and directs the entry hereof by the Clerk of said Court; and herein and

hereby finds and recites the facts as found by the Court and truthfully recites the same as follows:'' etc. The court then again said that ''all of the findings of fact and all of the decisions of the referee herein, which are not inconsistent with these findings and this decision, are hereby ratified, approved and confirmed,'' but added, ''the approved findings and conclusions of the referee being the following:'' and specifically included the referee's findings granting Mai Jean Sullivan's amended motion to vacate the settlement order of November 9, 1929, and charging the executors with $250 for the loss of a building and with rental items aggregating $330.50 not included in their accounting but included by the referee in the balance as stated. The court then in part disapproved the referee's charge of $400 for personal property unaccounted for and reduced it to $100; disallowed $302.88 of expense items taken by the executor and $380.44 taken by the executrix, $319.83 paid to the realtor for aiding the co-executors in their work, $11.70 paid from estate funds for telephone calls made by executor Sullivan's wife during his lifetime, and $100 to executrix Higgins' private nurse; again charged against the executors the items of $522.81 for premiums paid on excess insurance, and $310.55 incorrectly claimed as paid on insurance premiums, and apportioned the latter between the co-executors. It concluded that the executor was chargeable with $987.34 and the executrix with $2,228.96, or a total of $3,216.30 in favor of the estate, which is $1,582.14 less than charged by the order of June 8, 1940.

On October 10, 1940, Mai Jean Sullivan and Margaret K. ▮ Sullivan, her sister and also a devisee under the will, filed a motion to ''reopen and amend'' the order of August 13, and on January 27, 1941, they moved ''to vacate and set aside'' the same order. These motions were denied on February 18 and February 10, 1941, respectively, and the moving parties have attempted to appeal; but as the orders denying these motions are not appealable under subdivision 3 of section 9731, Revised Codes, we have no jurisdiction of such appeals and will therefore not notice them further.

No appeal was perfected from the order of June 8, 1940. The Maryland Casualty Company, Mai Jean Sullivan and Kathryn Baird Sullivan, as executrix of the will of James C. Sullivan, and as administratrix *de bonis non* of the estate of Margaret M. Sullivan, have attempted to appeal from the order of August 13, 1940, but as the appeal of the casualty company was the only one taken within the sixty days provided by subdivision 4 of section 9732, it is the only one of which we have jurisdiction.

The specifications of error are that in its order of August 13, 1940, the court erred (1) in granting Mai Jean Sullivan's motion to set aside the settlement order of November 9, 1929; (2) in charging the executrix with the unreported rental items aggregating $330.50; (3) in disallowing the $319.83 paid to the realtor; (4) in disallowing the expense credits of $302.88 and $380.44 taken by the executor and executrix, respectively; and (5) in charging the co-executors with $522.81 for excess premiums on fire insurance.

The first specification is not properly before us, for an order setting aside an order of settlement of account is not appealable under subdivision 3 of section 9731; and if it were, that order was made by the order of June 8, 1940, approving the referee's report and resettling the accounts, from which order no appeal was taken. The order of August 13 merely reiterated the former one and, even if that part setting aside the former settlement had been an appealable order, it could not have had the effect of again starting the sixty-day appeal period running.

The other specifications challenge charges against the executors totalling $1,856.46, but not even those items are properly before us, since it is apparent that the accounts were settled by the order of June 8, 1940, and that the amended order of August 13 was made without jurisdiction and is therefore void.

Section 10303 provides that the settlement of any account in probate is conclusive (with a saving clause not bearing upon this point), but that "the court may, upon motion of any party interested, or upon its own motion, within sixty days after the

rendition of the decree in cases of inadvertence, or within sixty days after the discovery of the facts constituting the fraud, reopen or set aside any decree of any settlement on the grounds of inadvertence or fraud.''

Here the amended order, as we have shown, purports to be based upon inadvertence and not upon fraud, and it is evident that the court had lost jurisdiction.

Appellant contends that the amended order was a valid and ▆▆ proper attempt by the court to amend its prior order so as to make the record express what was actually decided or to grant the relief originally intended; but it is well settled that the court has no power to amend its order so as to correct a judicial error or make a new adjudication. (*State ex rel. Vaughn* v. *District Court*, 111 Mont. 552, 111 Pac. (2d) 810; *State ex rel. Kruletz* v. *District Court*, 110 Mont. 36, 98 Pac. (2d) 883; *State ex rel. Union Bank & Trust Co.* v. *District Court*, 108 Mont. 151, 91 Pac. (2d) 403.)

An examination of the two orders shows that the purpose of the order of August 13 was not to correct the record to show what was actually decided or intended to be decided by the order of June 8, but rather to reconsider an adjudication which had become final so far as the district court was concerned. It sought to reduce by $1,582.14 the balance of $4,-798.44 found owing to the estate by the co-executors. If the difference were accounted for by clerical errors or by mistake in adding together the various items expressly found due in the first order, the amendment would be valid as one to show what was actually decided or intended to be decided, but no such showing can be made and in fact neither of the orders specifically established all the items so as to make the balance merely a matter of computation. The first order fixing the balance at $4,798.44 against the co-executors specifically mentioned only a few items and expressly adopted all of the referee's findings ''not inconsistent with these findings and decision.'' There can be no basis for the argument that it also adopted findings inconsistent with its decision as to the balance due and then proceeded to make an incorrect computation.

Furthermore, the attack is not upon the balance found by the amended account but on specific items. The item of $522.81 for excess fire insurance premiums was expressly included in the order of June 4, and the appellant was not harmed by its inclusion in the order of August 13, the damage, if any, having already been done. The referee expressly charged the $330.50 unreported rental collections, disallowed specific items exactly totalling the $302.88 for expenses improperly claimed by the executor, and disallowed specific items exceeding the totals of $319.83 paid to the realtor and the $380.44 for expenses improperly claimed by the executrix. The referee's findings on those points cannot be considered rejected by the order of June 8 as inconsistent with the latter, for there is nothing in that order which so indicates, and the expressed intention of the court in the August 13 order was to state specifically what it had intended but failed to state in the June 4 order. Accordingly there is no basis for the conclusion that in the first order the court intended to reject the findings on those particular items but erred in its calculation of the balance charged.

Thus there is no showing that the appellant was adversely affected by any of these findings in the order of August 13, and certainly it was not adversely affected by the attempted reduction of $1,582.14 in the balance due. Consequently, even if we could assume the validity of the August 13 order, no reversible error has been shown by the appellant. Any damage to its interests, and more, had already been done by the order of June 8, which had already become final and from which no appeal was perfected.

The respondents are entitled to recover their costs upon this appeal, but only as to their appearance as such and not as appellants. They are not entitled to their costs for the three transcripts and the briefs filed upon their abortive appeals.

It follows from what has been said, not that the order appealed from is affirmed, but that the appeal must be determined adversely to the contention of the appellant Maryland Casualty Company, with direction to the district court to proceed with

the administration of the estate in accordance with this decision. Accordingly it is so ordered.

A'SSOCIATE JUSTICES ANGSTMAN, ERICKSON, ANDERSON and MORRIS concur.